May I please the court, my name is Nate Kellum and I represent the appellants Tom Price and a ban on literature distribution that keeps them from sharing their religious viewpoints in a public way during a public festival. Every April in the City of Fayetteville they have a downtown festival called Dogwood Festival, very popular. A lot of people congregate in the downtown area, city streets are closed and Festival Park is opened up for various events. This is a unique opportunity for Mr. Price and Mr. Legg to share their message. So they want to go to traffic circle that is situated at the intersection of Ray Avenue and Maiden Lane. It's a wide open area, it's closed for vehicular traffic and while there they want to stand aside and hand out pamphlets to people as they are walking. It's closed to the cars but people walk through and they want to hand these pamphlets to anybody who's willing to receive them. Just preliminarily when did you file the complaint in this case? What day? I believe it was in March, maybe March 1, your honor. 2013? 2013, yes, your honor. Why do you say that this is capable of repetition yet evading review? Because it's an annual event. Dogwood Festival happens every single year and Mr. Price and Mr. Legg want to go every year. But I mean how long after these restrictions were announced did it take you to file a complaint? When you heard of the restriction on leafleting, how long after the restrictions were public? What period of time lapsed between that and when you filed your complaint? Well they were stopped in being able to hand out these tracks. How long had the restrictions been public? That was their first knowledge of it, was when they went to the 2012 event. So as far as how long they've been public, we don't know. So you had known of the restriction for a year? Well they were stopped at that point but then we tried to work it out with the city afterwards and tried to resolve the issue. They contacted myself and then we tried to work it out with the city. When it was clear that that was not going to happen, then we began the process. I was wondering how it would evade review if you promptly filed it. It could have been handled, this kind of thing's normally handled on an expedited basis and could have come up here. As far as 2013, the judge below was very accommodating. She was able to set the matter for hearing, she considered the matter, but she ruled against us. At that point we appealed focusing on 2014 and future events because it is an annual event. So even though they missed out on 2013, they certainly still retained their interest and the restriction is still in No, Your Honor, I wouldn't agree with that. Okay, where, show us where in Judge Flanagan's order that she referred to future festivals. I'm not sure that she did refer to future festivals. I know that was the context of the motion. I mean, unless you can show me someplace that I didn't see. And so we really only have the 2013 festival in front of us, don't we? I would disagree, Your Honor. I don't think so because the motion itself, and certainly she did not indicate that she was limiting the motion. The motion, you're appealing from the court's judgment. The court's final judgment and that's what we look at. The judgment on it. It's not what's on appeal, is it not? What's on appeal would be the judgment on the motion. That's what would be the appeal. Because this is a denial of a motion for a preliminary injunction. And the motion for a preliminary injunction clearly contemplated future festivals, 2014 and anything else that would happen during the context. Do we know that the restriction will even be in place for the 2014 festival? I mean, do we know? In the sense that, yeah, according to the record, they stated this is something that they wanted to put in place following 2010 and that they Have they put it in place for 2014? A lot of times people don't want to undergo the hassle of litigation. Well, they haven't so far. They certainly haven't indicated that to me, Judge Wilkinson, and we would have welcomed that notification, but that has not been the case. They don't have a policy for 2014 yet, correct? They do in the sense that they have set forth what their annual policy is, Your Honor. Have they applied for a permit for 2014 yet? I'm unaware if they have. I would think at some point they're going to have to apply for 2014. I don't know if the time is such that they would apply for that yet. And so what we have before the court with this denial of a motion for a preliminary injunction, which is the only way for this appellate court to consider the matter, would be But you wanted to enjoin the city of Fayetteville for the 2013 festival from enforcing this restriction, and the festival's already over. 2013 and future festivals, Your Honor, not just 2013. Certainly that was the matter that was at hand because that was the one that was directly in front of Mr. Legg and Mr. Price. They had been deprived in 2012, so they are focusing on 2013, but also future festivals in which this motion contemplates. The question right now is what we do with this appeal. And if, just speaking hypothetically, we were to dismiss the appeal as moved, that doesn't mean the whole case is dismissed. Wouldn't you continue to have your claims for maybe a permanent injunction, or for damages, or there are other forms of relief that you've thought? You've requested a permanent injunction, you've requested declaratory relief, you've requested nominal damages. If we were to dismiss the appeal as moved, would these other prayers for relief still be viable and continue to go forward? They would be intact, but what it would do is it would effectively deny Mr. Price and Mr. Legg of a right to appeal, of denial of a motion for a preliminary injunction, which they're entitled to have by the federal rules. They are entitled to— For a 2014 or a 2015 festival, notwithstanding the fact that the situation could change, there could be discovery that shows different facts, that a preliminary injunction could sweep so broadly to cover all future events, as opposed to a permanent injunction? What I'm saying is they have a right to appeal a denial of a preliminary injunction, and this is what this is. Right, but the court, in its order, talks about violation during the 2013 Fayetteville Dogwood Festival. The court does not discuss, in denying the motion for preliminary injunction, does not discuss future festivals. It just doesn't. The court had a six—what is it—17-page order, 18-page order, and it doesn't discuss it. So how do we take—how do we even consider what you're saying if the court didn't address it? That's not the fault of Mr. Price and Mr. Legg. I mean, the subject of the motion included 2014. It included future festivals that would occur during the pendency of the litigation. Did you ever tell the court that its order was too restrictive, that it should have considered future festivals in its ruling and didn't? Did you ever ask the court to expand the scope of its judgment order? No, Your Honor. I believe the order spoke for 2013, and it spoke for any future festivals with the same— Where does it speak to the future festivals, the court's final order? Because I don't think we could count on the reasoning of the court to change, and there was no basis for reconsideration. So what we did is we filed an appeal to this court to consider the matter, knowing that it is an annual event, and this is something that's been found in many other courts for this type of situation where you have annual events that, for one, it is contemplated by the motion itself, but second, it is something that's capable of repetition and yet evading review. And that's precisely what would happen if this court would be to dismiss the appeal. When are the 2014 regulations—when will they be made public? As far as I know, they're constantly public because they go for an annual basis, and so they're on the website where they state what their rules are, and it's been in place since 2010. Are you saying the policy for the 2014 festival is on the website now? I'm saying that their festival rules are on the website. So the policy for the 2014 festival is not published yet, is that right? I can't speak one way or the other. I know that they have festival rules that apply for each festival on an annual basis. Well, why not apply for a preliminary injunction with respect to the 2014 festival if you think they're out there? Because it would seem very likely, Judge Wilkinson, that— Just some clarification in a hurry, can't you? It would seem what would happen there is that we file for a motion for a preliminary injunction for 2014 before the court below. She reasons exactly the way she did in 2013 because there are no different circumstances. We have to find out whether this same restriction is going to be put in place. I mean, your answers to whether the regulations have been published and whether the policies that have been made clear for the 2014 festival have been a bit fuzzy.  as to whether the same policy is in place for the 2014 festival. I'll be as clear as that. Every understanding is that they are in place. That is, it is not something that they developed. Not your understanding. Has the city published those policies? They published the festival rules. And the way they explained by Kerry King— The 2014 festival. Kerry King did not speak in her affidavit, which is starting on page 78 of the record. She doesn't speak to 2014 or 2015. For that matter, she doesn't really speak to 2013. But what she speaks to is she speaks to festival rules that they said they needed to put in place following 2010 and so that they have festival rules that take place on an annual basis, Judge. And so if this court was to— Why, at the earliest moment that you held that belief, didn't you seek a preliminary injunction against the city at that point? That would seem to be an exercise of futility, particularly in the sense of if this matter is to be dismissed, then it would just be circular, where we would file a motion for a preliminary injunction. We get to the—by the time we get to this court, then the event is passed, and then you say, well, you need to file another motion for preliminary injunction. We don't know that the event would have been passed. I mean, you can get an expedited consideration for this kind of thing. Well, that's what we're hoping—that's what we're looking for right now, Your Honor, for 2014. We're asking for consideration where we have time, where it's in December. This event comes up in April. The issue hasn't been joined for 2014. It has if you consider the motion. The motion has been very clear in what it's encompassed. It is not just limited to 2013. It encompassed future events, Your Honor. It encompassed the future festivals. That is specific language. I don't know how Price and Leck could be any clearer in their motion. I'm actually sympathetic to your position on the merits because I don't— how this policy against leafleting actually relates in some way to the city's interest and purported interest in crowd control. The tie and the nexus there kind of escapes me, but the procedural posture is a very difficult one from your perspective. The mootness thing is a real hurdle, and what you're essentially asking us to do is to trim back on the Heffron case, and I understand how you want us to do that, and perhaps that's a viable route because Heffron was an enclosed area and this is open. So that's possible, but if you're asking us to shave a Supreme Court decision on a moot case, that's a tall order, and that's a lot of different hurdles. Your Honor, I guess I'm at a loss as to how the appellate court could ever consider the case because once you find out about the rules, then you file for a particular year that the rules are already in place, but then there's some confirmation through an application process or otherwise, because for 2012 they knew they were stopped, so they knew in 2013 what would happen. Well, you're meeting yourself going and coming because if the rules are already in place, if you think they're in place, then you go and get a judgment order with respect from the district court that addresses a festival that has yet to occur rather than one which is already over. Your Honor, I can tell you with all sincerity that that was the intention, that was what the scope of the motion entailed. The motion itself said it encompassed future events because of the timing discussion centered on the event that was coming up, but it encompassed all Dogwood Festival events, Your Honor. It was not limited to 2013. You can't appeal a motion. You appeal a judgment order of the court. From the motion, but if the judge fails to address it, that would be part of the appeal itself, Your Honor. That would be part of the appeal itself. Did you ever alert the court that it had, after it entered the judgment order, that it had failed to address a substantial part of your motion? I can state with 100% certainty that the judge believed that she encompassed everything with that order, that there would be no need for her to be redundant as far as what would happen in future events. I think you can get to the merits of this case, but it has to be set up right procedurally. It's in a very awkward posture right now. That's the difficulty. You must recognize that. You are not counsel below, or you haven't been with this case a long time, but you must recognize that just from an advisory opinion point of view, to be writing something at great length about a festival that's already occurred and not knowing what's going to occur in the future with a judgment order that's limited in its focus to a particular point in time. That's a difficult thing. You've got to realize it's in a problematic procedural posture right now. If I'm out of time, if I could just briefly address that. No, Your Honor. I've handled actually several cases with the exact same procedural posture, exact same procedural posture. In fact, I just handled a case in the Eighth Circuit where it was the exact same thing, where it dealt with an annual festival. The judgment below dealt with nothing about, made no mention of any future events, but it was dealing with the event at hand. But it was contemplated that because it would continue on an annual basis, also in a matter in the Sixth Circuit regarding Bays v. City of Fairbourn, it was an ongoing understanding of what the policy would be. There again, Your Honor, same procedural posture. So I think what's pertinent is in page 23 of the appendix where it's the motion for preliminary injunction entails what we sought. And then the judge responded to that. And that's our position, Your Honor. Thank you. I think you've got some time for a reply argument. Ms. McDonald, I'll be happy to hear from you. Good morning. May it please the Court, I'm Karen McDonald. I'm the city attorney for the City of Fayetteville. And my co-counsel here with me today is Andrew Erdeshek. I am addressing the mootness argument only. And wanted to highlight for you a couple of what I believe are pertinent facts, which is, number one, that the appellants sent us a letter, the city attorney's office, in May of 2012, which was shortly after the Dogwood Festival that occurred in April of 2012. We responded back within two weeks that the festival is put on by a private entity and that they needed to contact that private entity. Yet the appellants waited almost a year, the eve of the 2013 festival, to bring their complaint in motion for preliminary injunction. You mean after they learned of the restriction? Yes, sir. Yes, sir. They waited almost a year. Before filing a complaint. The complaint in the preliminary, the motion for a preliminary injunction. They did not. Even if we dismissed, I mean, the complaint below actually requests several forms of relief. Even if we were to dismiss this appeal as moot, wouldn't the claims for declaratory relief and a permanent injunction and nominal damages, for example, I'm thinking particularly the narrower claims of declaratory relief with respect to the policy and also the nominal damages for the, I think it would be $1, but it would be awarded in recognition of the fact that they were wrongly prevented from doing their leafleting around the traffic circle. Wouldn't those prayers for relief still go forward? Yes, sir. I think. We wouldn't be dismissing the whole case, would we? That's correct. It would just be their appeal for the preliminary injunction. I believe there are three reasons. That's a narrow question. Yes, sir. And I believe there are three reasons as to why their appeal that the denial of the preliminary injunction is moot. Number one, as this court has seemed to already recognize, their motion was only concerned with the 2013 Dogwood Festival. Number two, their request for all future Dogwood Festivals and other festivals held in downtown is insufficient. And then more importantly, and the one that I want to talk a little bit more about, is the instance of the capable of repetition yet evading review. On the future point, is the request for an injunction for all future festivals, is that a request in essence for a permanent injunction rather than simply a preliminary injunction? I do think so, Your Honor. And I think that we are only at the stage for what is sufficient for a preliminary injunction, and we simply don't have a record, any development in the record to issue a permanent injunction. We're just at the preliminary injunction stage. So you wanted to talk to us a little bit about capable of repetition yet evading review? Yes, sir. Why don't you address that? Yes, sir. There are two prongs to the standard for someone seeking to utilize this exception. The first one is that the challenge action is too short in duration to be fully litigated prior to cessation. And as I pointed out earlier, the plaintiffs failed to litigate this matter before the 2013 Dogwood Festival. They knew in 2012, shortly after the 2012 festival, that they had issues or concerns, yet they did not raise those for almost a year. They said they were negotiating with you. They sent us a letter, and we responded back to that letter in two weeks, Your Honor. We had no further contact with them after that. So to the extent it was not fully litigated prior to the cessation, that's the plaintiff's fault, that they took no action. Moreover, as we see, and I believe as Mr. Kellum pointed out, they didn't seek emergency review of the district court's order or otherwise file a motion for stay with the court prior to the 2013 festival. As he noted, he has done that in other cases. And, in fact, from the recent Sixth Circuit decision in Johnson v. Minneapolis Park and Recreation Board, which he was counsel of record, we know that he knows how to file a stay and to seek renewal of a stay. As to the second problem, which is the reasonable expectation of the same outcome occurring, again, we simply don't have information in the record that that would be the outcome. We don't have any information as it relates to the setup of the festival, what the rules of the festival will be, and more importantly how disputes will be handled in terms of if someone does not agree with the rules or in this case Is this policy going to be in place for the 2014 festival? I do not know, Your Honor. As we stated earlier, the Dogwood Festival is put on by a private entity, the Dogwood Festival. I know, but you're involved in it because you're making available a critical portion of the downtown area and you're closing off streets and the rest. So I'm not sure your state action argument is as strong as you may think it is because I think you're very much involved in this. You're co-partnering. We do have some involvement, Your Honor. However, at this point, they have not sought a permit for the 2014 festival, and so I simply do not know. I don't understand. Why is there the delay? Is it strategic on your part? Why can't you tell them whether the restriction is going to be in place or whether it isn't? I mean, it doesn't seem all that difficult to matter. Are you trying to, I mean, is this sort of gamesmanship? No, sir. They make their rules and they come to the city. Why can't they say it? Why can't they say it? Well, I don't know that they have not, Your Honor. All I can simply say, unfortunately, is that they make their rules and then they come to the city of Fayetteville for a permit. Obviously, at this point, I just don't know what their rules will be. Well, the lawsuit continues even though the appeal is dismissed. Perhaps it will take further proceedings below to find out the seemingly simple question that eludes an answer this morning. At any rate, do you have anything further? No, sir, and I will. The red light is on. Yes, sir. Let me ask my colleagues if they have further questions. Okay. We have no further questions. Thank you, Your Honor, and at this time, my co-counsel will come forward. Mr. Ertashek, be happy to hear from you. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. I'm Drew Ertashek with Poynter Spruill on behalf of the city. Your Honor, at the risk of snatching victory from the jaws of defeat, I do want to answer Your Honor's questions this morning about the interest that is substantial that the city has in this case. Aside from being a case of why are we here and why are we here now, this case is really about some plaintiffs who want to not just trim back on Heffron but who want to really relitigate Heffron. They want to what? To relitigate Heffron. In other words, the plaintiff's substantive playbook in this case from the very beginning has been mined from the dissenting opinion in Heffron just without attribution. A side-by-side comparison of their briefs in the trial court and their briefs before this court, particularly those pages that lack legal authority, match up very well with Justice Blackmun's dissent in Heffron. If I can briefly go through a couple of the substantive issues, and I realize that we didn't hear from Mr. Kellerman his principal argument, the interest that the city has in this case is substantial. Like in Heffron, it is the exact same interest. There's no difference. I understand that Mr. Kellerman pointed out in his brief that, to his view, there's a missing link between a restriction on literature distribution and crowd control. But the court in Heffron had no difficulty finding that link, and the exact same situation is present here except with one difference. It's three times as crowded in Fayetteville at the Dogwood Festival than it was at the fair in Heffron. And Judge Wilkinson, I understand your comment earlier. Part of the interest in crowd control in Heffron, as I understand it, was that it was an enclosed or fenced-in area, which probably had, I mean, anytime you have an enclosed area of whatever nature, it's a more combustible situation. But here, it may be a larger number of people, but it's also a more open, dispersed venue, isn't it? Well, it's not, Your Honor, and it might be helpful for the court if I can make some reference to a map here in the joint appendix and help the court understand why we believe that Heffron wasn't a situation where it was fenced-in, and to the extent it was, this is a situation where it is fenced-in. No, it was enclosed. Well, Your Honor, it was enclosed in the sense that the court said that it was continually open, often uncongested, and constituted not only a necessary conduit in the daily affairs of the locality citizens, but where people could enjoy the open air or the company of friends in a relaxed environment. The court did talk about that there were natural barriers, other buildings and other structures on the property that, quote, fenced in the property, but the majority in Heffron did not talk about a white picket fence, for lack of better words, around the property. And in the same sense, it is a confined space here. Paragraph 9 of Kerry King's affidavit mentions the word confined space. She talks about how it's blocked in by streets and buildings, just as it is in Heffron. And if Your Honors will indulge me and if I could speak to page 105 of the Joint Appendix. In 106, there's a map in the Joint Appendix. There's a certain key fact that Mr. Kellum either didn't mention quite accurately or may have inadvertently misstated. Not all the streets at the Dogwood Festival are closed to traffic. Not all of them. There are streets that are open to traffic, and there is a border or perimeter. Not around the traffic circle. Correct, Your Honor, not around the traffic. That's closed. That is closed to traffic, Your Honor, but in the same sense, in Heffron, there was a perimeter around the festival based on natural structures, but where the Christians wanted to be, at any particular point at the Minnesota State Fair, there wasn't individual fences around every area that they wanted to be. Leafleting seems to me the least disruptive, expressive activity that these people could do. They're not seeking to block anybody's view of anything. They're not soliciting funds or whatever. They're just leafleting. This is their one chance. There's never going to be this larger crowd where they can reach so many local people as on this occasion. Maybe they can leaflet 362 days a year. I don't know whether they can or whether they can't, but they won't reach their audience in quite the same way. Leafleting never struck me as something that was going to be a combustible activity unless somebody disagrees with the message. If that's the case, the problem is with the recipient, not the speaker. But this is, from an expressive point of view, it's pretty basic. It's pretty innocuous stuff. I have concerns about the procedural posture of the case, but I also have concerns about the fact that this policy seems to me, quite frankly, more overbearing in terms of its impact on expressive activities. Well, a couple points, Your Honor. The first is that, respectfully, however we may feel about the differences between solicitation and distribution, the Supreme Court in Heffron did disagree with the notion that it was innocuous. Those are the exact same arguments that were rejected by the majority in Heffron specifically. But the second thing I would say to Your Honor is perhaps if there were a more factual development in the record, reasons, testimony. That's what I say. That's part of the problem with the procedural posture in the case, is that it hasn't been developed as an evidentiary matter as to whether there's some substantial relationship between the asserted interest in crowd control and the restriction banning the leafleting. The ends-means relationship has never been tested by the evidence sufficiently. And, Your Honor, part of the reason for that is the city had a mere 20 days to get its act together through Ms. McDonald and me and other counsel to talk with folks, interview folks, and do what we could in a very short amount of time. Perhaps if there was a more developed factual record, we would be in a different place and be able to show even more how our interests are substantial as opposed to just the mere fact of population and numbers and size and streets blocked off and those things which we already believe show substantial interest. But, Your Honor, at this stage, their burden... You agree that the case for declaratory relief and nominal damages and, I suppose, a permanent injunction will still go forward even though the appeal of the preliminary injunction, even if it were to be dismissed, is moved. We can't just dismiss the whole case. That's not the forum. Absolutely, Your Honor. Not only have we never asked for that, but we pointed out in our brief very candidly towards the first third of our brief that the entire case may not be moved. And, in fact, Your Honor, we would concede, as Ms. McDonald... I can't see why it would be moved. We... Because how can, you know, damages, nominal damages by definition... I mean, injunctive relief is prospective, but damages relief is retrospective. And so the fact that the festival has occurred would, you know, might well have an impact on any prospective relief, but it wouldn't impact the retrospective claim. That's correct, Your Honor. We would concede that the underlying case is not moved. We would not argue with the court. And, again, we have never asked the court to dismiss the underlying case. I'm not sure that the court could dismiss the underlying case, to be perfectly candid. I mean... I appreciate that. And the court, as I think the court has recognized, this is sort of a bizarre procedural posture that is due to the plaintiffs. We cannot understand why we are here and why we are here now. Many things could change. They're outside of the record, and I'm not in a position to represent them to the court, but things are changing. The city and the Dogwood Festival, which are separate entities, may get together and may do some things differently in the future. You might want to reflect on your policy. The Dogwood Festival may. That's correct, Your Honor. It may. This whole thing may not be here in time for the next festival, which is, again, Your Honor, why this is moved. And we have yet to see a situation where another circuit has said, oh, no, this is okay, you can come up here now before any discovery, before anyone's been deposed, before... The only thing that's happened is a few folks have been interviewed and there have been affidavits. And there are many, many unanswered questions in this case. There's also a great deal of evidence that we would, frankly, love to put before this court. It helps our position. It helps explain why the interests are substantiated, but they're not in the record, because Mr. Kellum sought a stay of the trial court proceedings immediately after the preliminary injunction was denied. So we've had no opportunity to do any discovery. It's a very convenient procedural posture. And as I've said, Your Honors, there's no way to address the merits without completely relitigating, and I would say, Your Honor, not just trimming back on Heffron, but distinguishing Heffron on the mere basis that here we have Christians and there we had Krishnas. And that is the only difference between Heffron and this case. It is absolutely identical. And I'll be happy to answer questions from Your Honors about why this case is different, but the fact that Heffron was a limited public forum and this is a traditional public forum makes absolutely no difference. There's no legal difference, as we explained in our brief. The same tripartite legal analysis applies. There's no factual difference. Heffron talks about the rule being necessary because of the crowd concerns at a fair, in a crowded environment, talks about the characteristics of the fair. This is a fair. It's a Dogwood Festival, but it is exactly like the fair in Heffron. And again, Your Honor... Whether it can be distinguished or not depends upon the development, you know, the physical layout of the two sites. I'm not sure we have all the information on that. I mean, it depends on the physical layout of the two sites. It depends on relative crowd density and this and that and the rest. But at any rate... It does, Your Honor, and what we certainly don't have at this stage is what plaintiffs need to win on this appeal, and that is a clear showing that they are entitled to relief because they're likely to succeed on the merits. The whole thing is here on a very, very limited, narrow question, which is whether this appeal should be dismissed as moot. I mean, that's really all that we have before us. I wouldn't disagree, Your Honor, and as I said, I'm happy to be brief with the Court's time. If there's any other questions I can answer for the Court about the substantive merits of this case or even about the mootness issue, I'm certainly happy to do so. Thank you, Your Honor. Thank you, Your Honors. I would just point out that on page 79 of the record is the affidavit of Kerry King. She's the executive director of Dahlwit Festival. In paragraph 7, she speaks to, in 2010, implementing the rule that's before the Court, the banning of ledger distribution. There is no limitation on time. There is no mention of this is for 2010 through 2013. The rule was implemented. And so to put the onus on Mr. Price and Mr. Legg to say, well, there has to be some notification that this rule will still be in place really is a bit too much. And something else I would point out is that because it really does appear to be gamemanship in the sense that there's been constant criticism of the plaintiffs for not bringing the case soon enough after 2012 and yet, in the words of counsel, that we knew about it. In 2012, we knew about it at that event when he was stopped. That's exactly right. We did know about it. Just like we know about what's going to happen in 2014. It's the same situation. Knew about it in 2012 because they were stopped. Knew about it in 2013 because that's what they had in place. It's the only basis in which Mr. Price and Mr. Legg can pursue a preliminary injunction. Only basis whatsoever. And so, Your Honors, I would just respectfully ask for the Court to strongly consider considering this matter because this is practically what will happen. If the appeal is dismissed, then Mr. Price and Mr. Legg, they earnestly want to go out there for 2014. They want to be able to share their message 2014. So, file a motion for a preliminary injunction before the District Court. I will do my best to try to convince the Court that perhaps she was mistaken in the first place. But despite perhaps some advocate skills, I don't feel very confident that she'll change her mind in that respect. And we come right back here to this Court for 2014. It seems to be really an exercise in futility, particularly when you consider that the motion itself encompasses this very scenario, Your Honor. That because we're going to go through this cycle where we go back to the District Court. She says, oh, yes, what I said for 2013 goes for 2014. And then we come right back here on an expedited basis for the Court to be able to consider before that event. I really wish that the Court could consider that because that's what's going to happen procedurally in this matter when the Court has the case before it right now to decide on the merits, whether or not it was proper for the Court to deny the preliminary injunction. Thank you so much. Thank you. We will come down and greet counsel and then take a brief recess in order to reconstitute the panel. This Honorable Court will take a brief recess.
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, Stephanie D. Thacker